IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| WACHTER ELECTRIC COMPANY | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO: 3:10CV00083   SWW |
| ELECTRICAL SYSTEMS, INC.; | * | LEAD CASE |
| ROBERTS & SCHAEFER COMPANY; | * | |
| and RLI INSURANCE COMPANY | * | |
| | | |
| Defendants | | |

*consolidated with:*

| | | |
|---|---|---|
| ELECTRICAL SYSTEMS, INC. | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| VS. | * | |
| | * | NO: 3:10CV00140 DPM |
| WESTERN SURETY COMPANY | * | |
| | * | |
| Defendant | * | |

**ORDER**

Plaintiff Wachter Electric Company ("Wachter") brings this diversity action against Electrical Systems, Inc. ("ESI"), Roberts & Schaefer Company ("R&S"), and RLI Insurance Company ("RLI"). Before the Court are **(1)** R&S's motion to dismiss (docket entries #12, #13), Wachter's response in opposition (docket entries #20, #21), and R&S's reply (docket entry #29); **(2)** ESI's motion to dismiss or, in the alternative, to stay proceedings and compel arbitration

1

(docket entry #24), Wachter's responses in opposition (docket entries #30, #31, #43), and ESI's replies (docket entries #36, #49); and **(3)** Wachter's motion to consolidate (docket entries #40, #41), ESI's response in opposition (docket entry #44), Wachter's reply (docket entry #45), and ESI's surreply (docket entry #48).  After careful consideration, and for reasons that follow, R&S's motion to dismiss is denied, ESI's motion to stay the proceedings and compel arbitration is granted, and Wachter's motion to consolidate is granted.

## I.  Background

Defendant R&S entered a contract with nonparty Plum Point Power Partners, agreeing to perform construction work for a project known as the Plum Point Power Plant ("Plum Point Project") in Osceola, Arkansas.  Subsequently, R&S entered a subcontract with Defendant ESI, and ESI in turn subcontracted electrical work to Wachter.  Wachter alleges that it performed the electrical work, but ESI has refused to pay the contract balance of $437,793.51.  In addition to asserting breach of contract and action on account claims against ESI, Wachter brings claims for unjust enrichment and *quantum meruit* against R&S and ESI and a claim to enforce a mechanics' lien against R&S and RLI.

## II.  R&S's Motion to Dismiss for Failure to State a Claim

Wachter sues R&S, the general contractor of the Plum Point Project, for enforcement of a mechanics' lien, unjust enrichment, and *quantum meruit*, and R&S moves for dismissal of each claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all factual allegations in the complaint, but is "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1950 (2009) (quoting *Bell*

*Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  In deciding whether Wachter states a claim against R&S, the Court must determine whether it has plead facts with enough specificity "to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1965 (2007) (citations omitted).  A complaint cannot simply "[leave] open the possibility that a plaintiff might later establish some 'set of undisclosed facts' to support recovery." *Id.* at 1968 (citation omitted).  Rather, the facts set forth in the complaint must be sufficient to "nudge the . . . claims across the line from conceivable to plausible." *Id.* at 1974.

*Claim to Enforce Mechanics' Lien*.  In support of this claim, Wachter alleges that it complied with all requirements of Arkansas law necessary to establish a mechanics' lien in the amount of $437,793.51 against Plum Point Project real property.   Wachter further alleges that R&S and RLI executed a release-of-lien bond, which makes them jointly and severally liable for any sum that Wachter may recover on its mechanics' lien.

R&S argues that Wachter has no cause of action for enforcement of the discharged mechanics' lien because, pursuant to Arkansas law, Wachter's only recourse is a claim against the release-of-lien bond.  R&S further argues that even if the bond discharging the lien were not in place, foreclosure of the real property would lie only against the property owner.

R&S is correct that once a lien is discharged by virtue of a release-of-lien bond executed pursuant to Ark. Code Ann. § 18-44-118, the claimant must pursue relief afforded by the bond, not the land.  *See Calton Properties, Inc. v. Ken's Discount Bldg. Materials, Inc*., 282 Ark. 521, 523, 669 S.W.2d 469, 470 (1984).  Although Wachter categorizes its claim as an action to enforce a mechanics' lien, it is more precisely an action to test the validity of the lien and obtain a judgment against the bond, not a foreclosure against the property. *See* Ark. Code Ann. 18-44-

118(a)(2)("The bond shall be conditioned for the payment of the amount of the lien, or so much thereof as may be established by suit, . . . if upon trial it shall be found that the property was subject to the lien.").

In order to obtain relief available under the bond, Wachter must prove the same facts necessary to establish the existence of a valid lien.  Here, Wachter alleges that it performed electrical work that was actually used in the construction of the Plum Point Project and, despite demand for payment, ESI has failed and refused to pay the balance due.  Additionally, Wachter alleges that it complied with all statutory requirements necessary to obtain a mechanics' lien and that R&S and RLI executed a release-of-lien bond.  Finally, Wachter does not seek to foreclose against the property, it seeks relief under the bond.

The Court finds that Wachter may have mislabeled its claim but has nevertheless alleged facts sufficient to state a claim for relief.  Additionally, the Court finds that R&S, general contractor of the Plum Point Project and principal on the release bond, is a proper if not necessary party.  *See Servewell Plumbing, LLC v. Summit Contractors, Inc.,* 362 Ark. 598, 612, 210 S.W.3d 101, 111 (2005)(noting that once a release bond is approved, the claimant has recourse only against the principal and surety upon the bond); *see also Rasmussen v. Reed,* 255 Ark. 1064, 1065-1066, 505 S.W.2d 222, 223 (1974)(holding that general contractor is a necessary party in action to foreclose lien).

*Claims for Unjust Enrichment and Quantum Meruit.*  A party claiming unjust enrichment must show that the defendant received "something of value to which he is not entitled and which he should restore. There must be some operative act, intent, or situation to make the enrichment unjust and compensable." *Smith v. Whitener,* 42 Ark. App. 225, 856 S.W.2d 328, 329 (1993).

Claims for *quantum meruit* are generally based on the theory of unjust enrichment, and the amount of recovery is measured by the value of the benefit conferred upon the party unjustly enriched.  *See Sanders v. Bradley County Human Serv. Pub. Facilities Bd.*, 330 Ark. 675, 682, 956 S.W.2d 187, 190 (1997).

In support of its claims for unjust enrichment and *quantum meruit*, Wachter alleges that R&S has benefitted from and has refused to pay for the work and materials that Wachter contributed to the Plum Point Project.  R&S asserts four grounds for dismissal.  First, that Wachter's contract with ESI bars a claim for unjust enrichment.  As a general rule, when an express contract exists between the parties, unjust enrichment is not available as a means of recovery.  *See Servewell Plumbing, LLC v. Summit Contractors, Inc.*, 362 Ark. 598, 210 S.W.3d 101 (2005); *see also Hall Contracting Corp. v. Entergy Services, Inc.*, 309 F.3d 468, 475 (8th Cir. 2002)(citing *Lowell Perkins Agency, Inc. v. Jacobs*, 250 Ark. 952, 469 S.W.2d 89, 92-93 (1971)).  However, application of this general rule requires a valid and enforceable written contract that fully addresses the subject of the controversy.  *See Servewell*, 362 Ark. at 613, 469 S.W.2d at 112.  Furthermore, there are several exceptions to the general rule; even when a contract exists, a claim for unjust enrichment will lie if the circumstances give rise to an obligation to pay.  *See id*.  At this early stage in the case, the Court declines to find that the existence of a express, written contract bars Wachter's claim for unjust enrichment.

Second, R&S argues that it has not been enriched as a result of Wachter's labor because it does not own the property improved by Wachter's work and it "obtains no other benefit from the work."  Docket entry #13, at 7.  However, it is alleged that R&S, the general contractor of the Plum Point Project, benefitted from and refused to pay for the work and materials Wachter

contributed to the project. The Court finds that the facts alleged are sufficient to show that R&S was enriched as a result of Wachter's labor.

Third, R&S argues that Wachter's claims for unjust enrichment and *quantum meruit* are barred by the equitable laches doctrine. Dismissal of a claim on the ground of laches, an affirmative defense, requires a showing of unreasonable and unjustified delay in bringing a claim, and material prejudice to the defendant as a result of the delay. *See Summit Mall Company, LLC, v. Lemond* , 355 Ark. 190, 206, 132 S.W.3d 725, 735 (2003); *see also Advanced Cardiovascular Systems, Inc. v. Scimed Life Systems, Inc*., 988 F.2d 1157, 1161 (Fed. Cir. Minn. 1993). Here, R&S argues that the contract dispute between Wachter and ESI dates back to June 2008 and that Wachter's "failure to assert its claim in a timely fashion has resulted in delay on the Plum Point Project and caused undue prejudice to [R&S] by impairing its ability to carry out its contract with Plum Point Power Partners." Docket entry #13, at 10. However, the complaint allegations do not confirm the existence of an unreasonable delay on Wachter's part or resulting prejudice to R&S. The Court simply has no means, at this time, to determine whether Wachter's equitable claims are barred by laches. *See Advanced Cardiovascular Systems,* 988 F.2d at 1161("The strictures of Rule 12(b)(6), wherein dismissal of the claim is based solely on the complainant's pleading, are not readily applicable to a determination of laches.").

Fourth, R&S argues that Wachter's equitable claims for unjust enrichment and *quantum meruit* must be dismissed because it has an adequate remedy at law. However, at this stage of the litigation, Wachter is permitted to pursue alternative theories of recovery. *See Breeding v. Massey,* 378 F.2d 171, 178 (8th Cir. 1967).

### III.  ESI's Motion to Compel Arbitration

ESI moves to dismiss or stay this action on the ground that Wachter entered a binding agreement to arbitrate any controversy or claim between Wachter and ESI arising out of the parties' subcontract agreement.

Section 2 of the Federal Arbitration Act ("FAA") compels judicial enforcement of arbitration agreements in any "contract evidencing a transaction involving commerce." 9 U.S.C. § 2.  Here, there is no question that the subcontract agreement at issue evidences a transaction involving interstate commerce, thus the sole questions are (1) whether a valid agreement to arbitrate exists and (2) whether the dispute falls within the scope of the agreement.  *See Pro Tech Industries, Inc. v. URS Corp.*, 377 F.3d 868, 871 (8th Cir. 2004).

Wachter contends that it never agreed to arbitrate, but the undisputed facts show otherwise.  After entering a subcontract with R&S, ESI sought bids for electrical work and provided all bidders a sample subcontract with an arbitration clause which states that "any controversy or claim between Contractor and Subcontractor arising out of or relating to this subcontract . . . shall be settled by arbitration, conducted in accordance with the Construction Industry Arbitration rules of the American Arbitration Association, before a panel of three arbitrators."  Docket entry #24, Ex. E at 8.

In response to ESI's invitation, Wachter submitted a bid, which ESI accepted. Subsequently, ESI sent Wachter a  subcontract agreement (hereinafter "the ESI/Wachter subcontract") along with an email message instructing Wachter to sign and return.  *See* docket entry #24, Ex. H.   The ESI/Wachter subcontract is dated June 18, 2008, and it includes the same arbitration clause, quoted above, set forth in the sample subcontract that ESI provided in its

bidding package.  *See* docket entry #24, Ex. I.

Wachter alleges that it agreed to perform electrical work "representing a portion of the . . . work ESI was obligated to perform . . . pursuant to its subcontract with R&S,"[1] but it never agreed to the terms of the ESI/Wachter subcontract.  David Price, Wachter's president, testifies by affidavit he altered the ESI/Wachter subcontract, dated June 18, 2008, and transmitted the modified agreement to ESI on or about May 23, 2009.  *See* docket entry #31, Ex. #1, ¶ 15.  A copy of the subcontract as modified bears Price's signature and it retains the arbitration clause quoted above with the exception that it strikes the phrase "before a panel of three arbitrators." *See* docket entry #24, Ex. K.

Wachter contends that its agreement with ESI is memorialized in a purchase order issued by ESI on June 17, 2008, not the ESI/Wachter subcontract.  However, the purchase order provides:

> Unless otherwise provided herein, any written acknowledgment of this order or the delivery of any materials or services in accordance with this purchase shall constitute acceptance by the seller subject to all specifications, terms, and conditions on both the face and the reverse side of this order which are made a part hereof and also all attachments hereto.

Docket entry #24, Ex. G.   The foregoing language is relevant because (1) Wachter performed work pursuant tho the purchase order for which it received payment and (2) the ESI/Wachter subcontract states that it is an attachment to the purchase order.  Furthermore, in accordance with the terms of ESI/Wachter subcontract,[2] Wachter furnished "subcontract"

---

[1] Compl., ¶¶ 9, 11.

[2] Article 6 of the ESI/Wachter subcontract provides: "If Subcontractor is required in the Request for proposal to furnish a Performance and Payment Bond, Subcontractor shall, within ten (10) days after execution of this subcontract, and prior to commencement of Subcontractor's

performance and payment bonds dated August 14, 2008, which provide:

> Principal (Wachter) has by written agreement dated June 18, 2008, entered into a subcontract with Obligee (ESI) for R&S-Plum Point Coal Handling, Power & Controls for Material Handling Conveyors, Project No. 06-1105 which subcontract is by reference made a part hereof, and is referred to as subcontract.

Docket entry #24. Ex. J.   The payment and performance bonds bear Price's signature.

In determining whether parties have agreed to arbitrate a particular matter, the Court must apply ordinary state law contract principles, giving "healthy regard for the federal policy favoring arbitration." *Keymer v. Management Recruiter Int'l, Inc*., 169 F.3d 501, 504 (8th Cir. 1999).

Wachter asserts that Arkansas law governs the question,[3] and ESI cites Illinois case law.[4]   The Court, however, finds no conflict of law.   Under either Arkansas or Illinois law, a party may manifest acceptance of a written contract by conduct.  *See Compass Environmental, Inc. v. Polu Kai Services, L.L.C.,* 379 Ill. App. 3d 549, 554, 882 N.E.2d 1149, 1155 (2008)(holding that a subcontractor, by course of conduct, assented to terms and conditions on reverse side of purchase order); *Childs v. Adams,* 322 Ark. 424, 433 909 S.W.2d 641, 645 (1995)(explaining that manifestation of assent to a contract is judged objectively, and may be made wholly by spoken

---

Work, furnish the Contractor in form and content satisfactory to Contractor a Payment Bond and a Performance Bond issued by a reputable surety company duly licensed to do business in the jurisdiction in which the Subcontractor's Work is to be performed."  Docket entry #24, Ex. I at 7.

[3]*See* docket entry #31, at 2("When Arkansas is the forum state, Arkansas contract law will apply to determine whether an agreement to arbitrate exists.")(citing *Casteel v. Clear Channel Broad, Inc*., 254 F. Supp. 2d 1081, 1088 (W.D. Ark. 2003).

[4]*See* docket entry #24 at 12.  Additionally, the June 18, 2008 subcontract provides that the agreement "shall be governed according to the laws of the State of Illinois . . . . "  Docket entry #24, Ex. I (June 18, 2009 subcontract. ¶16.8).

words or by conduct). Here, Wachter manifested assent to the terms of the ESI/Wachter subcontract by delivery of materials and services in accordance with the June 17, 2008 purchase order, which incorporates that ESI/Wachter subcontract, and by furnishing performance and payment bonds (as required under the ESI/Wachter subcontract) that specifically acknowledge and incorporate the ESI/Wachter subcontract.

Wachter may not affirm the ESI/Wachter subcontract for some purposes while repudiating the agreement for the purpose of avoiding the arbitration clause. The Court finds that Wachter's conduct manifested acceptance of the ESI/Wachter subcontract. Further, the Court finds that Wachter's claims against ESI fall within the scope of the arbitration provision included in the subcontract, which provides that any controversy or claim between ESI and Wachter arising out of or relating to the subcontract shall be settled by arbitration,

Wachter asserts two additional arguments. First, that the Arkansas contractor licensing statute, which makes it a misdemeanor to undertake certain construction jobs without first procuring a license, *see* Ark. Code. Ann. § 17-25-103(a), prevents ESI from enforcing the arbitration provision. The licensing statute provides that '[n]o action may brought either at law or in equity to enforce any provision of any contract entered into in violation of this chapter." Ark. Code. Ann. § 17-25-103(d). Wachter reports that ESI did not have a contractor's license and therefore "cannot enforce any provision of any contract against Wachter." Docket entry #31, at 2.

The Supreme Court has held that in deciding whether parties entered a valid arbitration agreement, "state law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally."

10

*Perry v. Thomas* 482 U.S. 483, 492 n.9, 107 S.Ct. 2520, 2527 n.9 (1987). Here, the Arkansas contractor's licensing statute arose for the specific purpose of ensuring that contractors meet certain standards of responsibility. It does not govern the validity, revocability, and enforceability of contracts generally, and it is not relevant to the Court's inquiry, which is limited to whether there is an agreement to arbitrate. Because the Court has determined that the parties agreed to arbitrate, any controversy regarding the licensing statute is for the arbitrator to decide. *See Bob Schultz Motors, Inc. v. Kawasaki Motors Corp., U.S.A.* 334 F.3d 721, 726 (8th Cir. 2003)(citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404, 87 S.Ct. 1801, 1806 (1967)).

Second, Wachter asserts that ESI has waived any right to arbitration by filing a related lawsuit. After Wachter commenced this action, ESI initiated a lawsuit against Western Surety Company ("Western Surety"), seeking recovery on the aforementioned subcontract performance and payment bonds. *See Electrical Systems, Inc. v. Western Surety Company*, No. 3:10CV00140 DPM (Complaint filed July 2, 2010).

A party may waive arbitration rights by substantially invoking the litigation machinery before seeking arbitration. *See Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co.,* 989 F.2d 966, 969 (8th Cir. 1993). However, "[i]n light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration." *Id*. at 978-69. In this circuit, a waiver of arbitrability may be found where the party claiming the right to arbitrate: (1) knew of its existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by its inconsistent actions. *See Dumont v. Saskatchewan Government Ins*., 258 F.3d 880, 886 (8th Cir. 2001). Here, ESI

commenced a separate action to enforce performance and payment bonds only after it moved for dismissal or a stay of this case in favor of arbitration, and the Court does not find ESI's actions to be inconsistent with its arbitration rights.

The Court finds that Wachter entered a valid agreement to arbitrate and that Wachter's claims against ESI fall within the scope of that agreement. Further, for reasons explained below, the Court finds that this action should be stayed pending arbitration.

### IV. Motion to Consolidate

As previously stated, ESI instituted a separate lawsuit in this Court, *Electrical Systems, Inc. v. Western Surety Company*, No. 3:10CV00140 DPM, seeking recovery on the performance and payment bonds issued by Western Surety,[5] which name Wachter as principal. Western Surety and Wachter move to consolidate ESI's bond enforcement action with this case. ESI opposes consolidation, arguing that the cases arise from and involve separate and distinct legal and factual issues.

Rule 42(a) of the Federal Rules of Civil Procedure governs consolidation of separate actions and provides:

> If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
> (2) consolidate the actions; or
> (3) issue any other orders to avoid unnecessary cost or delay.

ESI asserts that its bond enforcement action "incorporates and adopts a totally different contract as the controlling document," namely the ESI/Wachter subcontract, but Wachter contends that the operative contract in this case is the June 17, 2008 purchase order. ESI points

---

[5]Western Surety is not a party to this action.

out that the ESI/Wachter subcontract provides that the parties' agreement is governed by Illinois law, but the purchase order dated June 17, 2008 issued to Wachter states that West Virginia law controls.

Contrary to ESI's assertion that the bond enforcement action concerns a "totally different" agreement, ESI's initial pleading in that case states: "On or about June 18, 2008, ESI and Wachter memorialized their agreement pursuant to a purchase order and attached subcontract (collectively the 'Wachter Subcontract')". *Electrical Systems, Inc. v. Western Surety Company*, No. 3:10CV00140 DPM (docket entry #1, ¶ 9.) Furthermore, it has been ESI's steadfast position in this case that the June 17, 2008 purchase order incorporates the arbitration provision and other terms contained in ESI/Wachter subcontract. Any discrepancies between the June 17, 2008 purchase order and the ESI/Wachter subcontract only heighten the danger of inconsistent rulings if the cases proceed separately.

"[C]onsolidation of separate actions presenting a common issue of law or fact is permitted under Rule 42 as a matter of convenience and economy in judicial administration. The district court is given broad discretion to decide whether consolidation would be desirable and the decision inevitably is highly contextual . . . . The consent of the parties is not required by the rule." 9 Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 2383 (3d ed. 2008). Here, the Court finds that consolidation is appropriate. Without question, the cases present common issues of law and fact, including whether Wachter failed to perform according to agreed specifications, and consolidation will promote judicial economy and consistent rulings. The motion to consolidate will be granted.

### V. Stay Pending Arbitration

For reasons stated, the Court finds that Wachter's claims against ESI are referable to arbitration. The Court further finds that Wachter's claims against R&S and RLI and ESI's bond enforcement claims should be stayed pending arbitration. The FAA mandates that judicial proceedings be stayed where issues to be addressed in such proceedings are "referable to arbitration." 9 U.S.C.A. § 3. Further, a "district court also has the inherent power to grant a stay in order to control its docket, conserve judicial resources, and provide for a just determination of the cases pending before it." *Webb v. R. Rowland & Co., Inc.*, 800 F.2d 803, 808 (8th Cir. 1986)(citing *Contracting Northwest, Inc. v. City of Fredericksburg*, 713 F.2d 382, 387 (8th Cir. 1983)). Here, in the interest of promoting efficiency and economy and the federal policy favoring agreements to arbitrate, this case will be stayed pending arbitration.

## VI. Conclusion

For the reasons stated, IT IS HEREBY ORDERED that:

(1) Separate Defendant Roberts & Schaefer Company's motion to dismiss (docket entry #12) is DENIED.

(2) Plaintiff's motion to consolidate (docket entry #40) is GRANTED. This case, Case No. 3:10CV00083 SWW, and Case No. 3:10CV00140 DPM are hereby CONSOLIDATED and shall continue as a single case under the lead case, Case No. 3:10CV00083 SWW. The parties are advised that all filings should be made only in the lead case, and the Clerk is directed that this order should be filed in both cases.

(3) Separate Defendant Electrical Systems, Inc.'s motion to stay proceedings and compel arbitration (docket entry #24) is GRANTED.

(4) The consolidated cases are hereby STAYED pending the outcome of arbitration

between Plaintiff and Separate Defendant Electrical Systems, Inc.   Plaintiff and Separate Defendant are directed to file a status report within 10 days after the conclusion of arbitration proceedings.

     IT IS SO ORDERED THIS 9TH   DAY OF DECEMBER, 2010.

                                  <u>/s/Susan Webber Wright</u>
                                  UNITED STATES DISTRICT JUDGE